CHAS. WINFREY'S ADM'R *v.* LEWIS GRIFFIN, ETC.

**Executors and Administrators—Suit by Distributees to Settle Estate—Receiver.**

Where a suit is brought by distributees against an administrator for the settlement of the estate, and assets are shown to be in his hands, the court will appoint a receiver and have the money in court for the purpose of more speedily adjusting the rights of the parties and effecting the object of the suit.

**Executors and Administrators—Refunding Bond—Paying Money Into Court Discharges Liability.**

The presumption is that after the lapse of five years from the grant of administration no debt will come against an administrator, and if under the statute he should be liable, a judgment of the court requiring him to pay the assets to its receiver would discharge him from liability. A refunding bond is therefore not necessary.

APPEAL FROM HENDERSON CIRCUIT COURT.

March 27, 1872.

OPINION BY JUDGE PETERS:

In cases like this where suits are brought by distributees against an administrator for the settlement of the estate and assets are shown to be in the hands of the administrator and admitted by him, if the court undertakes the settlement of the estate, it will appoint a receiver, and have the money in court for the more speedily adjusting the rights of the parties, and affecting the objects of the suit.

The power of appointing receivers, and having trust funds in court to be subject to its orders, has been exercised by courts of chancery from a very early period. Resting to be sure in the sound discretion of the court, and unless there has been an abuse of that discretion by a court below, this court would not interfere. In this case we see no abuse of the discretion.

Over five years had elapsed from the grant of letters of administration to appellant when the judgment complained of was rendered, no debts were likely to be presumed against him, and if under the statute he would be liable after the expiration of five years, the judgment of the court requiring him to pay the assets to its receiver would discharge him from liability. No refunding bonds were therefore necessary.

But we are not satisfied that appellant was properly charged with $210.00, estimated value of fourteen cattle not accounted for; $499.67, value of twenty-nine fat hogs, and $520.00, adjudged value of tobacco in barn over the amount accounted for.

The slaves of decedent were not free at the beginning of the year 1865. The evidence shows they could not be hired out. Some of the distributees, on consultation with the administrator, advised that they should be kept on the place and an effort

be made to make a crop that year with them, and with that object the necessary provisions had to be laid in, and a portion of the hogs and the corn on the place were set apart for that purpose. After the arrangement to make the crop failed, and some of the men had abandoned that place, the administrator sold the pork and lard left and accounted for the proceeds and it does not seem just that he should account for anything more.

The administrator has accounted for 9,450 pounds of tobacco in barns, and it seems, too, as that the evidence does not authorize a greater quantity to be charged to him. Adams, who was employed by the administrator to manage the farms and protect the property, proves there were between 8,000 and 9,000 pounds of the tobacco, that the appraisers estimated it at that quantity and he did not think there was any more than that. Martin says he estimated the tobacco in barns at from 10,000 to 12,-000 pounds, but he formed his opinion from general appearance and reports of others. This certainly is not sufficient to overturn the opinions of the appraisers acting upon oath, and of Adams whose opportunity of judging was better than Martin's. We therefore conclude that the administrator was improperly charged with $520.00 for tobacco more than he accounted for. It does not appear that the witness Hill ever told the administrator any one else that he would have given seventeen cents per pound for the tobacco, nor that he made the offer, and Mason and others prove that ten cents per pound was the highest price for it.

As to the cattle the report of the master is very unsatisfactory, as it is in other respects. J. Vanada proves that some of the cattle were drowned, perhaps ten or twelve, when the commissioner reports only fourteen unaccounted for and the report fails to set forth how many cattle were reserved on the place when the parties had it in contemplation to make a crop in 1865, and whether at the first sale all the cattle except these were not sold. It was therefore erroneous to charge the administrator with the $210.00 for the missing cattle, and he could be credited by that sum; also $499.67, value of twenty-nine fat hogs, and the $520.00, estimated value of tobacco in the barn improperly charged agains him, aggregating the sum of $1,299.67 and for which the judgment should credit. The judgment

must be reversed for the errors indicated , none others appearing, and the cause remanded with directions to render a judgment for the residue after deducting the aggregate sum specified $122.67 and for further proceedings consistent herewith.

And the judgment affirmed on the cross-appeal.

*Ray, Sweeney, for appellant.*

*Bush, Vance, for appellee.*

